UNITED STATES v. DUNBAR et al.

(Circuit Court of Appeals, Sixth Circuit. May 20, 1895.)

No. 255.

1. CUSTOMS DUTIES — EXPORT AND REIMPORTATION —"MANUFACTURES OR MACHINES."

A dredge boat, without power of self-propulsion, and capable of use as a dredging machine only, is a "manufacture or machine," within the meaning of Rev. St. § 2505, and, after exportation from the United States, is entitled, under that section, to be reimported without duty, if "returned in the same condition as exported."

2. SAME.

A dredge boat which was exported from the United States, was again returned thereto, but, before her return, was extensively repaired. The repairs consisted in part in putting in a new dipper and crane, substituting new and much heavier anchors, and a more powerful anchor hoist, and also in raising her deck to enable her to carry the additional weight. This involved an expenditure amounting to 40 per cent. of her value after the work was done. *Held*, that the dredge could not be considered as "returned in the same condition as exported" (Rev. St. § 2505), and that she was therefore subject to duty, notwithstanding that some of the work was done by American labor, and that part of the material used was American material.

Appeal from the Circuit Court of the United States for the Northern Division of the Western District of Michigan.

This was an application by C. F. and H. T. Dunbar to review a decision of the board of general appraisers reversing the action of the collector of the port of Marquette, Mich., in exacting duties upon a dredge boat reimported into the United States. The circuit court sustained the action of the board of appraisers, and the United States appealed.

John Power, U. S. Atty., and R. L. Newnham, Asst. U. S. Atty., for the United States.

John L. Romer, for appellees.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

LURTON, Circuit Judge. The question for decision in this case is as to whether the dredge boat Tipperary Boy, exported to Canada in 1882, and imported in 1890, is entitled to entry without duty, as a manufacture of the United States, "returned in the same condition as exported." 22 Stat. 517; Rev. St. U. S. § 2505. This dredge boat was properly regarded as a manufacture or machine, and not as a vessel, inasmuch as it has no power of propelling itself, and is incapable of use save as a dredging machine. It was built in the United States in 1873, exported to Canada in 1875, returned in 1880 or 1881, re-exported to Canada in 1882, and returned in 1890. The collector of customs at Marquette, Mich., on the evidence submitted to him, held that the article was not "returned in the same condition as exported," and was therefore liable to duty. The importers paid the duty assessed under protest, and appealed to the board of United States general appraisers, who affirmed the decision of the collector. Proper proceedings were taken to procure a review by the United States circuit court of the questions of law and fact involved in the decision made by the board of appraisers, and an order was made referring the matter to Appraiser Ham to take and return such further evidence as might be offered relating to the questions at issue. Additional evidence was taken and returned, and the questions submitted to the circuit court, which reversed the collector and board of general appraisers, and found that the Tipperary Boy was an article of manufacture of the United States returned to the United States "in substantially the same condition as when exported." From this decision the United States has appealed.

The original cost of this dredge, in 1873, was some $13,000. Its customs value when exported, in 1882, was $7,500, and it was entered for importation in 1890 as of the value of $8,000. Just before this importation it was, at the close of the season of 1889, towed from a point on the St. Lawrence river, through Lakes Ontario and Erie, to Amherstburg, on the Canada side of the Detroit river, and nearly opposite Detroit. At Amherstburg it was put in a shipyard, and overhauled and reconstructed at an expenditure of about $3,000. It was then entered at the port of Marquette, Mich., as an article of American manufacture "returned in the same condition as when exported." In explanation of this very large expenditure just before importation, the owners, in a sworn statement of facts filed with the collector at Marquette, stated that, "When we were about to bring the Tipperary Boy back, we found that she needed repairs before it would be safe to tow her here,"—a statement which would seem to be quite inconsistent with the fact that, before making any of the so-called repairs, it was towed from the St. Lawrence river to Amherstburg. This very large expenditure, amounting to 40 per cent. of the value of the dredge after the work was done, is shown to have consisted in replanking, and, to some extent, reframing, her bow and stern; raising the forward deck; recalking the bottom and sides; putting in a new dipper and crane; substituting new and much heavier anchors, and a more powerful anchor hoist. The principal reason for these expenditures seems to be found in the fact that the owners were about to engage in dredging on the St.

Mary's river, where the current was stiff, and the bottom rocky. This condition required heavier anchors, by means of which the dredge might be securely held in position while at work. The means by which such dredges are held in place is by the use of beams of solid oak, from 40 to 45 feet in length, placed perpendicularly on the bottom of the stream, one at each corner of the bow, and a third at the stern. These beams are held to the dredge by iron slides, through which they are let down or drawn up. These beams constitute the anchors of such a floating machine, and are put down or taken up by means of a derrick and gearing operated by the engines, and called an "anchor hoist." The anchors exported were of a diameter of 16x18 inches, and the anchor hoist exported was of power sufficient to operate them. For the exported anchors the owners substituted anchors having a diameter of 24x24 inches. The increased weight of these anchors so settled the bow of the dredge as to necessitate the raising of the forward deck nine inches. To operate them in the slides, the old anchor hoist was insufficient, and so a new and more powerful hoist was procured. This new hoist was not attached to the dredge until after importation, but was placed on the dredge, ready to be attached, and duty was paid thereon without protest. The adaptation of the dredge for the harder and more difficult work under contract, in our judgment, amounted to such a substantial change in its condition as to defeat the claim that it was "returned in the same condition as exported." That condition was deliberately and premeditately changed to meet the conditions surrounding the new work to which she was to be put. When returned, the old anchor hoist, though still in place, was useless to handle the substituted anchors, and the forward deck had been raised to meet the conditions resulting from the adaptation of the anchors to the contract about to be undertaken. That some of the material used in this partial construction, or in substituting new for old in the work of repair proper, was American material, or that some of the ship carpenters engaged on the work were American citizens, is of no importance whatever. The only standard of the free entry act is that the condition of the machine or thing, when entered for importation, shall be the same as when exported. The words of the statute, "in the same condition as when exported," have been used without change, since 1842, in defining what articles of American manufacture may be returned without duty after importation. A very strict construction has been uniformly put upon this provision by the treasury department, as is shown by numerous treasury decisions; and this strictness of construction seems fully supported by the cases of Knight v. Schell, 24 How. 526, and Belcher v. Linn, Id. 533. In the cases cited it was held that empty new barrels, made in the United States, and exported to be filled with molasses and returned, were not entitled to free entry, the court saying in Belcher v. Linn that:

"It is impossible to hold that molasses barrels manufactured here, and exported to a foreign port, and there filled with molasses, whether it be the ordinary article, or that denominated 'concentrated,' and then reimported with their contents to this country, were brought back in the same condition

v.67F.no.6—50

as when exported, within the true intent and meaning of the acts of congress. Contrary to the views of the plaintiffs, we think the words 'the same condition' mean, not only that the identity of the article exported is preserved, but that its utility for its original purposes is unchanged. On this point we adopt the view taken by the defendant, because it appears to be more consonant with the language of the provision under consideration, and with the obvious intent of congress in passing it."

These cases seem to demand that the intent of congress shall not be evaded by an elastic construction of the words of the provision The decision of the collector and board of appraisers has not, in our judgment, been overthrown by the additional evidence. Judg ment of the circuit court reversed.